IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CODY LEIGHTON ALEN PURCELL                                                           PLAINTIFF

v.                                            Civil No. 4:20-cv-04080

ALLEN PUMPHREY, Correctional Officer;
JOSEPH FLOYD, Correctional Officer; CAPTAIN
TRACY SMITH; GINA BUTLER, Jail Administrator,
Little River County Jail; KENNY PURCELL; and
SHERIFF BOBBY WALRAVEN                                                               DEFENDANTS

## MEMORANDUM OPINION

This is a civil rights action filed *pro* se by Plaintiff, Cody Leighton Alen Purcell, under 42 U.S.C. § 1983.  On February 24, 2021, the parties consented to have the undersigned conduct all proceedings in this case including a jury or nonjury trial and to order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  (ECF No. 21). Before the Court is a Motion for Summary Judgment filed by Defendants.  (ECF No. 22).  Plaintiff filed a Response (ECF No. 30), and Defendants filed a Reply.  (ECF No. 32).

### I. FACTUAL BACKGROUND

Plaintiff is currently incarcerated in the Arkansas Division of Corrections ("ADC"), Randall L. Williams Correction Facility, in Pine Bluff, Arkansas.  His claims in this action arise from alleged incidents that occurred on July 4, 2020, while he was being booked into the Little River County Detention Center ("LRCDC") and his subsequent incarceration there.

Plaintiff was arrested and booked into the LRCDC on July 4, 2020.  (ECF No. 23-1, p. 1). During the booking process, an altercation occurred between Plaintiff and other LRCDC officers. Several incident reports and voluntary statements were provided by various witnesses and individuals involved in the disturbance shortly after the incident occurred.  (ECF No. 23-1, pp. 3-

1

10). Photographs were also taken of injuries sustained by Officer Allen Pumphrey. (ECF No. 23-1, pp. 11-15).

In an incident report, prepared on July 4, 2020, Deputy Sheriff Russell Hopkins[1] stated in part:

> On July 4, 2020, I…responded to a report of a fight in the LRC Jail. I arrived in the jail to find Correctional Officer Allen Pumphrey and Officer Joseph Floyd actively fight inmate Cody Purcell. I was able to asssit in securing PURCELL into a call at the time I arrived. After securing PURCELL, I spoke with Officer Pumphrey who was in a nearby restroom. Officer Pumphrey had obvious injuries to his mouth and to his neck. Officer Pumphrey was escorted out of the Jail by officers and transported to the LRC hospital by Jail Administrator Gina Butler…
>
> …PURCELL was currently being held at the LRC Jail of charges by the Ashdown Police Department and is now also being held for pending Felony charges due to the incident involving Officer Pumphrey.
>
> Statements were also taken from other jailers that were present at the time of the incident and will be on file with this report.

(ECF No. 23-1, p. 5).

In a voluntary statement prepared on the evening of July 4, 2020, Officer Pumphrey wrote:

> Officer Blagg was making an attempt to book inmate Purcell into the jail. Purcell was acting aggressively toward Blagg at this time. Officer Blagg came to get me because I am certified in JPX [pepper spray]. I made an attempt to book Purcell who continued to argue. I made several attempts to explain the situation to him but he wouldn't listen. Purcell even told me which cell to put him in. He became more angry when I told him he wasn't going in that cell. I explained that he had to go in a quarantine cell. Purcell told me at this time that he would fight and was in 'Prison mode." At this time, Purcell kicked the lockers in the booking area. I made an attempt to restrain Purcell to prevent him from damaging anything else or harming himself. Purcell overpowered tried to choke me with both hands. During this time, I was unable to breathe and almost went unconscious. Purcell also punched me in the face. We continued to try to get Purcell into a cell and were able to do so with the help of other officers. After the incident I was taken to the LRC hospital by Jail Administrator Butler for my injuries.

---

[1] Deputy Hopkins is not a named Defendant in this lawsuit.

(ECF No. 23-1, p. 8).

Officer Johnny Blagg prepared the following voluntary statement on the evening of July 4, 2020:

> I…tried to finger print Inmate Cody Purcell during which Inmate Purcell decided to become extremely aggressive and lunge towards me. I then stated 'that is a very bad idea' and provided a little space to keep from his reach and maintain control. I then traded places with correctional officer Allen Pumphrey due to him having JPX training. I then observed Inmate Purcell become aggressive to Officer Pumphrey and Correctional Officer Joseph Floyd. Officer Pumphrey and Officer Floyd began to struggle with Inmate Purcell and moved out of my view. I then called a fight in the jail over the radio. Officer Pumphrey and Floyd made their way to the Booking area and continued their struggle with Inmate Purcell. At this time multiple officers and deputies arrived and put him in the cell.

(ECF No. 23-1, p. 9).

Officer Joseph Floyd also prepared a voluntary statement on the evening of July 4, 2020. He states:

> Cody Purcell was brought to the jail 7-4-2020. After information was taken, Purcell refused to have his fingerprints taken. Dep. Pumphrey tried to take Cody Purcell's picture and prints. Mr. Purcell became extremely aggressive and pushed Dep. Pumphrey. He then began fighting myself and Dep. Pumphrey. Dep. Pumphrey and myself were able to detain Mr. Purcell. When we got to our feet, Mr. Purcell began to fight again, pushing and throwing punches. Mr. Purcell then ripped the counter top off and had it ready to use. I then took the counter top out of Mr. Purcell's hand. Dep. Pumphrey then got clear of Mr. Purcell. Mr. Purcell then came for me as I tried to get him in the holding cell. Mr. Purcell then took a swing at me and knocked my glasses off. I was able to get Mr. Purcell in the holding cell under great resistance. It was then when deputies and officers were able to relieve us.

(ECF No. 23-1, p. 10).

According to the affidavit of Jail Administrator Gina Butler, after the incident involving Plaintiff on July 4, 2020, emergency medical personnel were contacted. She testified Plaintiff was evaluated by EMT personnel and EMT personnel determined that he was not injured and did not need medical treatment. She also testified Plaintiff had no visible injuries after the incident. In

addition, she states Plaintiff did not submit a written sick call request at any time requesting medical care for any injuries arising from the July 4, 2020, incident. (ECF No. 23-1, p. 2).

In addition, Jail Administrator Butler testified Plaintiff did not submit a written grievance at any time alleging that Officers Pumphrey or Floyd – or any other member of the LRCDC staff - used excessive force against him or otherwise violated his rights on July 4, 2020. (ECF No. 23-1, p. 2).

On July 13, 2020, Plaintiff submitted a medical request stating, "mental health meds needed, southwest medical health will not release info. Due to case being closed over a year." (ECF No. 23-1, p. 38). Medical staff noted on the request, "refused to be seen." *Id.*

On July 17, 2020, Plaintiff filed a grievance stating, "Sheriff BOBBY WALRAVEN, request for transfer due to cruel and unusual treatment. Because of my charges and religious preference I've been continuously treated different and unfairly. I've read my rights as a inmate and know the law as well as officer codes and conductes. I fear my life and health is at risk. Request transfer." (ECF No. 23-1, p. 19). Jail administrator Butler responded, "[d]ue to Covid, no one is being transferred anywhere except ADC – per Sheriff Walraven." *Id.*

On July 24, 2020, Plaintiff was charged with second-degree battery due to his conduct during the July 4, 2020, incident. (ECF No. 23-2, p. 1).[2]

On July 29, 2020, Plaintiff filed a grievance stating, "Dear Ms. Gina. Will you please ask Mr. Bobby Walraven if I find out the details of my childs mothers funeral. How much will the fees amount to, and can he fix transportation, so I can attend the funeral?" (ECF No. 23-1, p. 20).

---

[2] (ECF No. 23-2, pp. 1-13) consists of state court filings from the *State of Arkansas v. Cody Leighton Purcell*, Little River County Circuit Court Case No. 41CR-20-94. The Court will take judicial notice of these public state court records. *See Stutzka v. McCarville,* 420 F.3d 757, 761 n. 2 (8th Cir. 2005) (court may take judicial notice of public records).

Jail Administrator Butler responded, "[y]ou are ADC property.  We cannot let you leave without their permission unless we are transporting you to them."  *Id.*

> On July 31, 2020, Plaintiff filed a grievance stating:
>
> I've asked several different times since 7-4-2020 if I could receive a different matt to sleep on that doesn't have visible pepper spray that burns my face and one without mold and maybe one that has some cotton.  Many people have left out so maybe there is a matt available for me now on 7-31-2020.  Please, it's cruel and unfair to me that I have a less then up to date matt the same as every other inmate.

(ECF No. 23-1, p. 21).  Captain Tracy Smith responded, "[t]his has been handled."  *Id.*

> On July 31, 2020, Plaintiff filed a second grievance stating:
>
> On 7-30-2020 I received a call from my attorney stating that I was est-up to watch the videos pertaining to my case and charge and was going to be allowed to call and talk to him about the video.  I was wondering since it's now 7-31-2020 when it's set for me to watch the video and call my lawyer?

(ECF No. 23-1, p. 22).  Jail Administrator Butler responded as follows:

> Your lawyer doesn't dictate when we have the ability or time to allow you to watch videos.  We had other things come up yesterday.  You lawyer is not in today, so we will allow you to watch it Monday when we have time and you can call him after that.  You have opportunities to call your lawyer daily during your dayroom time!

*Id.*

> On August 3, 2020, Plaintiff filed a grievance stating:
>
> I received a lesser then, old matt, with pepper spray visible on it on 7-4-2020.  All other inmates have newer improved matts that are properly up to standard.  I have verbally asked guards, SGTs, Cpt, etc. if I could exchange or receive a equal adiquit matt the same as all other inmates.  This is my second (2) request.  I would like to know if I could be treated equally to every other inmate and receive a decent matt without pepper spray.

(ECF No. 23-1, p. 23).  Captain Tracy Smith responded, "[y]our mat has been swapped out."  *Id.*

> On August 5, 2020, Plaintiff filed a grievance stating:
>
> I have watched one body cam video.  My lawyer said I was to watch that and also the mounted on the wall camera videos.  Captain Smith said he didn't have

> knowledge of this, that he'd have to talk to Gina.  So I was wondering if there was
> a video for those cameras or when I could view them?  So I can view them all and
> call to communicatee with my lawyer.

(ECF No. 23-1, p. 24).  Jail Administrator Butler responded, "Your lawyer only told of the one video.  You will have to ask your lawyer about any other videos & as for communicating with your lawyer, you have 3 hrs every day to call him.  We are not stopping you from calling your lawyer." *Id.*

On August 6, 2020, Plaintiff filed a grievance stating, "Mrs. Gina can I please move to cell 6.  I've wrote (2) request about this issue.  Or to any other cell please.  I've been good." (ECF No. 23-1, p. 25).  Jail Administrator Butler responded, "This is the 1st request I've seen and no, we are not moving anyone at this time." *Id.*

On August 7, 2020, Plaintiff filed a grievance stating, "Second request.  My health and maybe life is in danger due to cultural and religious differences.  I'm scared of my cell-mate and feel in danger of bodily harm." (ECF No. 23-1, p. 26).  Jail Administrator Butler responded, "We have not heard not one problem come out of that cell except for you hollering at other inmates.  If there has been an actual threat that we can prosecute on, then that's one thing, but just because you don't like your cell mate is not a reason." *Id.*

On August 11, 2020, Plaintiff filed a grievance stating, "Since I've been good and since I'm only doing a (90) day can I become a trusty or at lease go to the PV Pod and get away from all these rambunchshious felones?" (ECF No. 23-1, p. 27).  Captain Tracy Smith responded, "No." *Id.*

On August 12, 2020, Plaintiff filed a grievance stating, "May I have a power of attorney form please. And a print-out motion of discovery for case #41-DR-16-18 and #41-DR-16-19." (ECF No. 23-1, p. 28).  Captain Tracy Smith responded, "All these forms come from your attorney.

You need to ask him." *Id.*

On August 26, 2020, Plaintiff filed a grievance stating:

Again I'm being singled out and treated differently due to discrimination and being punished, not because of rules but inequality of my name in this town, my charges, and also my cultural preference! Amongst all inmates I'm being called out and punished beyond reason and it's cruel and unusual. I've been asking for a transfer due to this and it's a continuous problem along with threats for my health and safety and officers are using there power of authority in abuse to retaliate against me.

(ECF No. 23-1, p. 29). Captain Tracy Smith responded, "There is body camera video footage of your disruptive actions that you are receiving restrictions for." *Id.*

On September 1, 2020, Plaintiff filed a grievance stating, "May I please have copied print-out of my white warrant from July 4, 2020 and my parole violation papers for my 90 day parole violation." (ECF No. 23-1, p. 30). Jail Administrator Butler responded, "I thought we already gave you copies. We give you copies as we get them. What did you do with your copies?" *Id.*

On September 1, 2020, Plaintiff filed a grievance stating:

On September 1, 2020 at 8:24 am, I Cody Purcell asked Captain Tracy Smith of Little River County Detention Center if him or our Jail Adm. Could fill out and sign my certificate of inmate account and assets that's to be completed by the institution of incarcerated. He stated that their lawyers said not to fill the documents out.

(ECF No. 23-1, p. 31). Jail Administrator Butler responded, "We do not fill out or sign anything per our lawyers. He was correct." *Id.*

On September 3, 2020, Plaintiff filed a grievance stating:

On July 4th during book in for misdemeaner charges I asked what my bond would be and was told I could not post bond due to a white warrant that was issued. I then asked what for and was told by officer Pumphrey that my parole officer had it issued. And now I received another copy that's dated July 9, 2020 from a warrant for retaking prisoner. My first question is can I have a copy of the white warrant for absconder from the 4th of July. My second question is why could I not bond out on those misdemeaner charges that day if my parole warrant wasn't issued until July 9, 2020?

7

(ECF No. 23-1, p. 32).  Jail Administrator Butler responded, "I am giving you a copy of the white warrant issued by Officer Archie on July 4, 2020."  *Id.* at pp. 14-15.

On September 7, 2020, Plaintiff filed a grievance stating:

How? When? And can you please help me get a mental evaluation/treatment.  All these years of confinement and prison are messing with me.  Images and old demons are coming back.  These walls are talking to me and I'm stressing over court and the results.  My girlfriend and babies are holding me together barely.  I've got severe mental anguish and I'm worried about myself and others.  I don't have meds. Or drugs to help aid my thoughts can you get the judge to court order my mental health treatment please help me solitary confinement may be needed.

(ECF No. 23-1, p. 34).  Jail Administrator Butler responded:

I cannot get the judge to court order your mental treatment.  Only your lawyer can ask for that, but then that's going to require a mental evaluation.  You can always talk to the doctor and if he feels you need the mental help he can either prescribe meds or refer you to mental health.

*Id.*

On September 11, 2020, Plaintiff submitted a medical request stating, "mental evaluation; anxiety/paranoia/extreme depression/other."  (ECF No. 23-1, p. 39).  Medical staff noted on the request, "taking any Rx."  *Id.*

On September 15, 2020, Plaintiff filed his Complaint in the instant lawsuit.  (ECF No. 1).

On September 19, 2020, Plaintiff filed a grievance stating:

I was told nobody was getting transferred due to Covid-19 then (5) inmates got moved to another county.  I requested a transferre due to safety concerns and to many conflicts of interest.  I felt my life, health, and freedom was in danger and still do.  So how can I get moved to a safer facility where I can rest and not stress everyday over my fear for safety and fair treatment.  Some place I can be a not be treated differently and not received threats.

(ECF No. 23-1, p. 35).  Jail Administrator Butler responded:

When you were told this, no one was.  We were able to find a few beds.  Who we moved is none of your concern.  Your life has never been threatened and you have not been put in any harm.  Nor have you ever acted like you were in any undue

> stress, harm, danger.  You laugh and carry on and yell continuously daily! Down the hall to other cells & inmates.

*Id.*

On September 20, 2020, Plaintiff filed a grievance stating:

> Why am I not able to get a authorized officer to fill out my certificate of inmate account and assets, so that I can go further onto my lawsuit.  It's court ordered to be filled out a returned to the circuit clerk by a certain time.  Per. Honorable Judge Barry A. Bryant as of September 15, 2020.

(ECF No. 23-1, p. 36).  Jail Administrator Butler responded, "We do not handle your money.  We do not touch the money at all or keep records of the commissary, phone accounts, therefore we will not and cannot sign anything to the fact of how much money you have/have not had." *Id.*

On September 24, 2020, medical staff noted on a medical request form that Plaintiff reported "psy.issues. Wasn't on any Rx prior to jail. [illegible] anger & anxiety. [illegible]." (ECF No. 23-1, p. 40).

On October 22, 2020, Plaintiff filed a grievance stating, "Mrs. Gina can I have a copy of my 'Civil Rights' and the criteria for the charge (Battery II). From the Little River County Law Library." (ECF No. 23-1, p. 37).  Jail Administrator Butler responded, "You will need to request this from your lawyer.  I will forward this to him." *Id.*

In early December of 2020, Plaintiff pled guilty to felony second-degree battery arising from the July 4, 2020 incident at the LRCDC.  He was sentenced to thirty-six (36) months of imprisonment in the ADC.  (ECF No. 23-2, pp. 4-13).

On December 8, 2020, Plaintiff was transferred from the LRCDC to the ADC.  (ECF No. 23-1, p. 1).

## II.  LRCDC's POLICIES AND PROCEDURES

The LRCDC has policies in place regarding inmate grievances, inmate medical calls, and

use of force by its officers. (ECF No. 23-1, pp. 41-46). The relevant portions of these policies are set forth below.

      The LRCDC's grievance policy states in full:

I.     POLICY:

    Inmates will be provided an avenue where complaints regarding conditions of confinement may be addressed.

II.    GENERAL INFORMATION:

    A. Unless evidently frivolous or groundless, every request or complaint shall be promptly dealt with and replied to without undue delay.
    B. All grievances will be forwarded up from the receiving deputy, to supervisor, and to the Detention Administrator. All grievances will be reviewed and answered by the Detention Administrator or Sheriff.

III.   PROCEDURE:

    A. <u>Transmittal</u>:
      1. A grievance shall be submitted in the form of a written statement by the inmate promptly following the incident on a form specified. Such statements shall be transmitted without interference within eight (8) hours to the shift supervisor by the detention jailer to whom the grievance is given.

    B. <u>Contents</u>:
      1. The grievance shall state fully the: time, date, names of the detention deputy and/or staff members involved, and pertinent details of the incident, including the names of any witnesses.

    C. <u>Review</u>:
      1. Upon receipt of a grievance by the supervisor, the Detention Administrator shall review the grievance and determine if it constitutes:
        a. A prohibited act by a detention officer or staff member.
        b. A violation of the inmate's civil rights.
        c. A criminal act.
        d. An Abridgement of inmate privileges.

    D. <u>Investigation</u>:
      1. If the grievance constitutes a prohibited act by a detention jailer, a criminal act, or a violation of the inmate's civil rights, the Detention Administrator shall order a prompt investigation.

    E.  <u>Written Response:</u>
1. Any inmate who submits a grievance shall promptly receive a written response following the investigation of the grievance.

    F.  <u>Interference:</u>
1. Any detention Officer or staff member who subjects an inmate to harassment, curtailment of privileges or any type of punishment as a response to a grievance, or who attempts to prevent or interfere with the reporting of a grievance, shall be subject to immediate dismissal from employment.

    G.  <u>Emergency Grievances:</u>
1. An emergency grievance involves an immediate threat to a detainee's safety or welfare.  Once the receiving staff member approached by a detainee determines that he/she is in fact raising an issue requiring urgent attention, emergency grievance procedures will apply.  An appropriate response under these circumstances involves an <u>immediate</u> notification to supervisory personnel, such that the 'chain of command' enacts an appropriate solution to the emergent situation.

(ECF No. 23-1, pp. 41-42).

The LRCDC's Medical Call policy provides in part as follows:

I.      <u>POLICY:</u>

In order to provide inmates with an opportunity to communicate their health care needs to qualified medial personnel, a sick call system has been developed and implemented at the jail to ensure that all inmate requests for health care are documented and referred to medical staff in a timely and efficient manner.

II.     <u>GENERAL INFORMATION:</u>

A. Inmates desiring to see a health care worker for either a medical, dental or mental health care need will be advised to complete a sick call form and return it to the jailer.
B. Jailers will ensure that the inmates assigned to their units are advised of the daily scheduled time that sick call forms will be picked up in order to afford them sufficient time to compete their sick call form.
C. The medical staff will be responsible for reviewing and for prioritizing all sick call forms.  Under normal circumstances, examinations will be scheduled no later than the next scheduled Dr. visit.
D. The medical staff will compile a list of inmates requesting medical care.

  E. Copies of all sick call forms will be retained by the medical staff and will be filed in each inmate's record…

(ECF No. 23-1, pp. 43-44).

 The LRCDC's policy outlining the appropriate use of force states:

  A. <u>POLICY:</u>

  Detention Personnel will use only that force and restraint necessary to control an inmate who displays a violent or threatening behavior.

  II. <u>GENERAL INFORMATION:</u>

  A. Physical force and restraints shall be used as a last resort.  Jail staff shall use the proper escalation of force starting with the lowest level appropriate for the situation.
   1. Verbal Persuasion – Attempt to verbally convince the inmate to cooperate. Do not use foul language or disrespect toward inmates when attempting to verbally convince them to cooperate.
   2. Verbal Warnings – If verbal persuasion fails, warn the inmate of the consequences of non-cooperation (e.g., use of force, disciplinary sanctions).
   3. Show of Force – If warnings are not effective, call for backup personnel in an attempt to intimidate through a show of force.
   4. Control Holds – If a show of force is insufficient or impossible, the officer shall attempt to use physical holds designed to gain control of the inmate. NO blows shall be struck by the officer unless the resisting inmate becomes an attacker.

  B. Detention staff shall use only that amount of force necessary to gain and maintain control of an inmate in a volatile situation to avoid or minimize injuries to all persons involved.
  C. Force and restraints shall not be used as a form of punishment.

  III. <u>USE OF FORCE:</u>

  A. Only the force necessary to gain and maintain control of a situation is authorized.  In no event is physical force justifiable as punishment.
  B. The use of a chemical agent is authorized to assist in gaining control of a violent or potentially violent inmate.
  C. Medial staff will be immediately notified should an injury occur to an inmate or staff member as a result of using physical force, chemical agents and/or restraints.
  D. After every incident in which a jailer has had to use physical force, an incident report will be written describing the incident and the force used.  This report

      shall be forwarded to the jail administrator.

   III.     USE OF RESTRAINTS:

      A. Restraining devices, i.e., handcuffs, leg irons and leather strapping material will be stored in secured areas.
      B. Proper restraints will be used only as a precaution against escape, to prevent self-injury, injury to others, or property damage.
      C. Restraint devices will not be used as a means of inflicting punishment on an inmate.
      D. An inmate placed in restraints shall be closely monitored at no less than fifteen (15) minute intervals.
      E. An incident report will be written and forwarded to the jail administrator.

(ECF No. 23-1, pp. 45-46).

### III. PROCEDURAL BACKGROUND

On September 15, 2020, Plaintiff filed the instant lawsuit naming the following as Defendants: Allen Pumphrey and Joseph Floyd, Correctional Officers at the LRCDC; Tracy Smith, a Captain at the LRCDC; Gina Butler, the Jail Administrator for the LRCDC; Kenny Purcell, an employee at the LRCDC; and Bobby Walraven, the Sheriff of Little River County. (ECF No. 1). Plaintiff states he did not present the facts set forth in his Complaint in a written prisoner grievance procedure noting, "They only give me certain grievances back, then when I ask they tell me to contact my lawyer to get in touch with their lawyer." *Id.* at p. 2. Plaintiff asserts three enumerated claims. He is seeking compensatory and punitive damages. *Id.* at p. 7.

In Claim One, Plaintiff alleges Defendants Pumphrey and Floyd used excessive force against him on July 4, 2020. He is suing them in both their personal and official capacities. Plaintiff specifically states, "Correctional officers Alen Pumphrey grabbed me by my throat and slammed me into a set of lockers then him and c/o Joseph Floyd slammed me to the ground and continuously kneed me in the ribs and Officer Pumphrey kept his hands around my throat." (ECF No. 1, p. 4). Plaintiff describes his official capacity claim against Defendants Pumphrey and Floyd

stating, "they use force to detain aggressive inmates but once I put my hands up I was showing submission. They also stated in one of their statements that the reason the officers traded was due to Jpx training. Hand cuffs not fist and pepper spray not choke-outs." *Id.* at p. 5.

In Claim Two, Plaintiff states he is suing Defendant Floyd in his personal capacity only for using "excessive force, assault, police brutality" against him on July 4, 2020. (ECF No. 1, p. 5). He specifically alleges "After the pleading and screams for help they knew the other officer Johnny Blagg Jr called in other officers. They let me up and was still being aggressive as they where grabbing me up Officer Joseph Floyd punched me dead scquare in my forehead." *Id.*

In Claim Three, Plaintiff alleges Defendants Pumphrey, Floyd, Smith, Butler, Purcell and Walraven denied him medical care on July 4, 2020. (ECF No. 1, p. 6). He is suing these Defendants in both their personal and official capacities. Plaintiff specifically states, "After all the police brutality and excessieve force I asked for medical treatment for my ankle and head to check for a head concussion. I couldn't walk and it's still hurt. I'm also more forgetful. They meds showed up and dismissed my health issues without evaluation. (body cam videos). *Id.* For his official capacity claim Plaintiff states, "Captain Tracy Smith along with all officers and admin. Know medical treatment is and was needed in any physical situations." *Id.* at p. 7.

On January 12, 2021, Geoffrey D. Kearney entered his appearance as counsel for Plaintiff. (ECF No. 18).

On April 6, 2021, Defendants filed a Motion for Summary Judgment arguing they are entitled to summary judgment because: 1) Plaintiff's claims for excessive force and denial of medical care are barred because he failed to exhaust his administrative remedies; 2) Plaintiff's claim for excessive force is barred by *Heck v. Humphrey*; 3) there is no evidence Plaintiff suffered any injury as a result of the July 4, 2020 incident and there is no evidence any Defendant was

14

deliberately indifferent to his medical needs; 4) Defendants are entitled to qualified immunity; and 5) Plaintiff's official capacity claims fail as a matter of law because there is no evidence of a widespread policy or custom of Little River County that was the motivating force behind any constitutional violation. (ECF No. 22). Defendants also filed a Brief and a Statement of Facts in support of the motion. (ECF Nos. 23, 24).

On June 8, 2021, Plaintiff filed a Response in opposition to the summary judgment motion along with a Statement of Facts. (ECF No. 30, 31). Plaintiff argues: 1) Defendants have not demonstrated that the grievance policy applies to Plaintiff's claims; 2) the grievance procedures were unavailable to Plaintiff; 3) *Heck v. Humphrey* does not apply; and 4) qualified immunity does not bar Plaintiff's claims. *Id.* at pp. 2-9. Plaintiff also submitted an affidavit in which he states:

> After the incident not only was I denied medical treatment but also my phone or phone calls, visitation, commissary privileges, grievance procedure or rights. I was locked in a holding cell for 17 or more days and even oral statements I wasn't allowed nothing like grievances or contact with anyone. When I got to Nevada County months later they helped me with getting medical help and a lawyer and legal work. III.A.C. states did you present the facts relating to your complaint in the state or county written prisoner grievance procedure, and I checked no and stated in C. that I only got certain grievances back and has now and listed 1-20-21 – medical request at Nevada County. 6 months later.

(ECF No. 31-1).

On June 16, 2021, Defendant filed a Reply arguing: 1) Plaintiff's affidavit does not dispute his guilty plea and conviction arising out of his conduct during the July 4, 2020, incident; 2) Plaintiff's alleged grievance and medical care at a different facility does not satisfy his obligation under the Prison Litigation Reform Act ("PLRA") to exhaust his remedies at the LRCDC where he was housed between July 4, 2020, and December 8, 2020; and 3) Plaintiff availed himself of the LRCDC's grievance procedure many times over, submitting written grievances and medical requests throughout July, August, September and October of 2020 – none of which related to any

15

claims of excessive force or denial of medical care during or following the July 4, 2020 incident. (ECF No. 32).

## IV. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## V. DISCUSSION

Defendants argue Plaintiff failed to exhaust his administrative remedies on his claims of excessive force and denial of medical care before he filed the instant lawsuit and consequently his claims are barred. This Court agrees.

The PLRA in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted). The Court stated the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

There is no dispute the LRCDC had a grievance procedure in place for detainees to use at the time the incidents occurred which Plaintiff claims resulted in a violation of his rights. There is no dispute Plaintiff filed many grievances during the relevant time at the LRCDC. There is also

no dispute Plaintiff did not file any grievances related to excessive force or denial of medical care arising from the July 4, 2020, incident prior to filing the instant Complaint. In his Complaint Plaintiff states he did not file grievances on these issues because, "They only give me certain grievances back, then when I ask they tell me to contact my lawyer to get in touch with their lawyer." (ECF No. 1, p. 2). Plaintiff also submitted an affidavit in opposition to the summary judgment motion stating in part, "After the incident not only was I denied medical treatment but also my phone or phone calls, visitation, commissary privileges, grievance procedure or rights. I was locked in a holding cell for 17 or more days and even oral statements I wasn't allowed nothing like grievances or contact with anyone…" (ECF No. 31-1).[3]

Plaintiff's own grievances and medical requests he filed while he was in the LRCDC completely undermine his claim that the grievance procedure was not available to him. Plaintiff utilized the LRCDC's grievance procedure eighteen (18) times between July 17, 2020, and October 22, 2020. At least two of these grievances referred to the "charges" filed against him arising out of the July 4, 2020, incident but did not mention anything about excessive force against him. In addition, Plaintiff filed a medical request for "mental health" on July 13, 2020 – just nine days after the July 4th incident – and another on September 11, 2020. Neither of these requests mentioned anything about denial of care for injuries he allegedly sustained after the July 4, 2020, incident.

---

[3] Plaintiff's counsel also argues Defendants have not proved the LRCDC's grievance policy applies to claims regarding excessive force by its officers because the policy states inmates may use the grievance procedure for conditions of confinement which does not include claims for excessive force. This argument fails for several reasons. First, the language in the grievance policy clearly contemplates inmates will file grievances based on violations of an inmate's constitutional rights which includes claims of excessive force. (ECF No. 23-1, pp. 41-42). Second, Plaintiff does not allege the grievance procedure does not apply to his claims of excessive force in either his Complaint or his affidavit. Moreover, the Supreme Court has ruled that claims for excessive force must be administratively exhausted and fall within the definition of "prison conditions". *See Porter,* 534 U.S. at 518 (2002).

As previously stated, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Accordingly, Defendants are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies.

## VI. CONCLUSION

For the reasons stated above, Defendants Pumphrey, Floyd, Smith, Butler, Purcell and Walraven's Motion for Summary Judgment (ECF No. 22) is **GRANTED**. All claims against Defendants are **DISMISSED WITHOUT PREJUDICE**.[4] A judgment of even date will be entered.

**DATED this 10th day of September 2021.**

*/s/ Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[4] Claims that are dismissed for failure to exhaust administrative remedies should be dismissed without prejudice. *See Langford v. Norris*, 614 F.3d 445, 457 (8th Cir. 2010). Therefore, there is no need to address the merits of Plaintiff's claims, whether the claims are *Heck* barred, or whether Defendants are entitled to qualified immunity.